### GALBREATH et al. v. FARRELL. [*]
(No. 3044.)

(Court of Civil Appeals of Texas. Texarkana. April 23, 1925. Rehearing Denied July 2, 1925.)

1. **Judgment** ⬯584—**Judgment or decree of court of competent jurisdiction on merits constitutes bar to new action or suit involving same cause of action.**

Judgment or decree of court of competent jurisdiction on merits concludes parties and privies to litigation, and is bar to new action or suit involving same cause of action.

2. **Judgment** ⬯572(2)—**Judgment sustaining general demurrer, if not reversed, precludes plaintiff from recovery in another suit between same parties upon same cause of action.**

Judgment sustaining general demurrer is as final and conclusive as if rendered on findings of facts, and if not appealed from and reversed plaintiff is precluded from recovery in another suit between same parties on same cause of action.

3. **Judgment** ⬯589(1) — **Judgment in trespass to try title held res judicata, in suit to dissolve partnership and compel accounting of partnership assets, as being on the same cause, though different in form.**

In statutory suit of trespass to try title, in which grievance constituting basis of complaint was repudiation of agreement to jointly own land when conveyed, and act together with plaintiffs in opening up and operating gravel pits, and in which plaintiff sought to recover undivided interest in land and damages measured by rental value thereof, judgment on exceptions to pleadings was res judicata in subsequent suit between same parties to dissolve partnership alleged to exist between them, and to compel accounting of partnership assets in which they sought recovery of interest in land and damages, although profits were measured from sale of gravel thereon instead of rental value of land.

Appeal from District Court, Collins County; F. E. Wilcox, Judge.

Suit by W. V. Galbreath and another against H. T. Farrell to dissolve a partnership and for accounting. Judgment for defendant, and plaintiffs appeal. Affirmed.

In their petition appellants (plaintiffs in the court below) alleged that about January 15, 1917, they and appellee (defendant in said court) "entered into a partnership under and by virtue of an oral contract," whereby appellee agreed, first, to purchase and pay for 132 acres of land in Dallas county, described by metes and bounds and as containing "extensive and valuable gravel beds;" and second, to furnish money necessary to acquire a right of way for, and to construct, a spur track from the Texas & Pacific Railway Company's line of railway

⬯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[*]Writ of error refused November 18, 1925.

to said land, and to "finance the enterprise of removing the gravel from said lands and marketing such gravel until such enterprise had progressed far enough for the proceeds of the sales of gravel to be sufficient to pay the expenses incident to operating said gravel beds and marketing the output;" and whereby appellants agreed (1) "to use their best endeavors towards obtaining from the officials of the Texas & Pacific Railway Company the privilege of connecting the spur track aforesaid with the said Texas & Pacific Railroad;" (2) to assist in arranging for ties, rails, and a bridge "necessary for the construction of said spur track;" (3) to arrange with said railway company for cars to haul gravel to be removed from the land; (4) to "look after the finding of purchasers for the gravel"; and (5) to take "active charge and superintendence of the work of opening up and developing the gravel beds and transporting and selling the output thereof." Appellants alleged, further, that, while appellee was to take the title to the 132 acres of land in his own name, it was understood that same was to "immediately become the property of said partnership, and be used and developed for the benefit of said partnership," and that they and appellee were to "join together and co-operate in the enterprise of obtaining said lands and mining and removing and selling the gravel therefrom," and were "to have, own, and enjoy equal interests in said partnership and in all the firm assets, including said land, and in particular the gravel beds thereon and therein, and were to share equally in the profits from the adventure."

They alleged, further, that the 132 acres of land was "practically worthless except for the gravel in same, that the principal purpose in acquiring same was to obtain the gravel," and that the partnership was to "continue as long as gravel could be found in and taken" from it in paying quantities. They alleged, further, that the legal effect of the agreement between them and appellee was to create a mining partnership "for the purpose of acquiring, owning, and holding said gravel lands," and "mining and exploiting same," and "dividing the profits to be derived from such enterprise" among them equally. They alleged, further, that appellee, in pursuance of the agreement, about March 22, 1917, purchased and paid for the land, and that they (appellants) on their part caused a survey to be made for the purpose of locating the spur track, assisted in procuring a right of way and crossties, rails, and a bridge therefor, and arranged for connecting same with the Texas & Pacific Railway Company's track, and had, besides, "made inquiries and conducted negotiations looking to the procuring of purchasers" for the gravel, and that appellant Comer had spent $4,792.76 in connection with the enterprise, when, to wit, on, March 25,

1918, appellee "excluded them from further participation" therein. They alleged, further, that appellee began the actual operation of a gravel pit on said land about August 1, 1918, and was indebted to them in the sum of $236,042 as their part of the profits realized from such operation, and that they were "entitled to a lien against the entire interest" of appellee "in all said properties" to secure "reimbursement for the expenditures made by them for the benefit of the business, which under the terms of the partnership agreement should have been made by the defendant, Farrell, and also to secure the payment to them of all sums which may be shown to be due them as a result of the accounting herein asked for."

They prayed for an accounting covering the partnership business, for judgment for the amount thereby found to be due them, and foreclosing the lien they asserted to exist to secure the payment of such amount, and dissolving the partnership between them and appellee, and directing the sale of its property and the distribution of the proceeds of such sale among the owners thereof, and prayed, further, "that they have all such other and further relief, both legal and equitable, as to the court may seem just and proper."

In his answer appellee (among other matters, which need not be stated) pleaded "not guilty," set up the statute of limitations of 2 and 4 years as a defense against the recovery appellants sought against him, and, as another defense against such a recovery, alleged that the "matters and things" appellants "sued on [quoting] have been in all things adjudicated between plaintiffs and defendant, and are now res adjudicata between them." As supporting his said pleas, appellee alleged, further, and at the trial proved, that by a petition filed April 25, 1918, appellants commenced a suit against him in a district court of Dallas county; that in their said petition appellants alleged that, on April 1, 1917, each of them owned in fee simple and was "lawfully seized and possessed of" an undivided one-third interest in said 132 acres of land, and that appellee was the owner of the other undivided one-third interest therein; that on the day specified appellee ejected them from the land "and excluded them from the exercise of their rights as tenants in common of said premises," and thereafter unlawfully held possession of the land to their damage in the sum of $6,000; that the rental value of their two-thirds undivided interest in the land was $6,000 a year; that appellee purchased the land March 22, 1917, and before he did so agreed with them (appellants) that while he would have the legal title thereto conveyed to him alone, they "should in fact have and enjoy equal interests and rights in the land, each owning an undivided one-

third interest therein;" that accordingly the legal title to the land was conveyed to appellee, impressed with an express trust in their favor, "by virtue whereof they became (quoting) and still are the beneficial owners of two-thirds of the land;" that the land contained "extensive deposits or beds of gravel of good quality and great value, which was known to plaintiffs and defendant before the purchase of the land, and constituted the chief inducement to its acquisition by the parties to this suit, it being their plan and purpose to connect such gravel beds with transportation facilities and develop and exploit such gravel beds and derive large profits therefrom, which plan is entirely feasible and could be fully carried out with great profit to all three of said parties; that defendant, however, now fails and refuses to carry out said plan, or permit same to be done, and is seeking to repudiate said trust, and is showing a disposition to question plaintiffs' rights and interests as above stated, and is wrongfully excluding plaintiffs from the possession and enjoyment of any part of said land, to their great damage as aforesaid;" that appellants prayed in said petition for judgment for the restitution of said premises according to their respective interests therein, and "for their rents, damages, and costs of suit," and for general relief; that appellants afterward, to wit, on October 4, 1921, filed their "first amended original petition," in lieu of the one above referred to, but which was like it, except that appellants alleged that the damages they had sustained by appellee's withholding possession of the land from them was $50,000 instead of $6,000, and further alleged that the rental value of their two-thirds interest was $12,000 a year instead of $6,000.; that afterwards, but on the same day, to wit, said October 4, 1921, appellants filed a "trial amendment" in which they alleged that appellee "agreed that he would obtain the land mentioned in this suit and pay the entire purchase price of same himself, and have the legal title to said land conveyed to him alone, and agreed with the plaintiffs that, although the deed was to be made in his name, he and the the plaintiffs should in fact have and enjoy equal interests and rights in said lands; that the consideration for and upon which defendant so agreed with the plaintiffs was that the plaintiffs agreed with the defendant that they would assist in making contracts for the development of the gravel pit on said lands, and for opening up, handling, and operating the same; that they would procure or make the necessary arrangements to obtain the necessary rails, ties, and bridge to build a spur track to connect the main line of the Texas & Pacific Railway in and to said gravel pit, and would procure and assist in procuring a track connection from said spur track to the main line of said Texas & Pacific Railway, and that the plaintiffs would assist in selling the gravel from such pit after the same was in operation, would take charge of the same, and manage and supervise the operation thereof, either personally or by making contracts with others for such operation until such time as the gravel should be exhausted or practically exhausted from said land. In this connection the plaintiffs say that the defendant was and for a long time had been acquainted with the plaintiffs, and knew that the plaintiffs had for many years been engaged in the various branches of railroad operation, and that they were on friendly terms with railroad officials and could procure concessions by reasons thereof, and that the plaintiffs' services in procuring the necessary rails, ties, and bridge and the railroad connection necessary for the operation of such spur track would be of great value to the defendant and the enterprise in question. Plaintiffs say that they faithfully performed their part of said agreement, in so far as procuring rails, ties, bridge, and railroad connections were concerned, and were ready and willing and would have performed all other parts of said agreement, except for the repudiation by the defendant of the plaintiffs' rights and interest in said land and his refusal to permit them further to perform their agreement with the defendant with respect to the operation of said gravel pit; that plaintiffs are still ready and willing, if permitted by the defendant, to fully perform all things agreed to in the agreement between them and the defendant;" that exceptions, general and special, interposed by appellee to appellants' said pleadings were sustained by the court in which the suit was commenced as stated, and that, appellants having refused to further amend their said pleadings, their suit was on, to wit, October 5, 1921, by said court dismissed, and judgment was rendered that appellee "go hence without day, and that he have and recover his costs of appellants"; that an appeal was prosecuted by appellants from said judgment to the Court of Civil Appeals at Dallas; and that said judgment was by said Court of Civil Appeals affirmed by an order made February 10, 1923. In a supplemental answer appellee alleged that:

"Plaintiffs' said former suit was an election by them as to their method of procedure, the assertion of any right which they may have had or claim under the alleged agreement with defendant; and that, having prosecuted said suit to final judgment, and having thus made their election, they are now estopped and precluded from abandoning said election and maintaining this suit."

Appellants offered, and the trial court admitted as evidence relevant to the plea of res adjudicata, the opinions of the Court of Civil Appeals on appeals prosecuted in the

former suit reported in 221 S. W. 1015, and 249 S. W. 277.

The trial was to the court without a jury, and resulted in a judgment sustaining appellee's plea of res adjudicata, and in his favor for costs. The judgment contained a recital with reference to the claim of appellants on account of expenditures by appellant Comer, alleged to have been made in connection with the alleged partnership business, as follows:

"Some question having arisen as to the proper construction of that part of plaintiffs' first amended original petition, filed October 16, 1923, which claimed in behalf of plaintiff L. B. Comer the recovery of the sum of $4,792.76, alleged to have been expended by him for the benefit of the partnership enterprise, whereas the same should have been furnished by defendant, H. T. Farrell, it was announced and agreed in open court by said Comer through his attorneys that he sought recovery of said sum of money only in connection with and as a part of the principal cause of action pleaded by the plaintiffs seeking a dissolution of the alleged partnership and a full accounting among the alleged partners, and that said Comer was not seeking the recovery of said sum of $4,-792.76 as a distinct and independent cause of action based upon a quantum meruit."

R. M. Rowland, of Fort Worth, and Merritt & Leddy, of Dallas, for appellants.

Smith & Abernathy, of McKinney, and Head, Dillard, Smith, Maxey & Head, of Sherman, for appellee.

WILLSON, C. J. (after stating the facts as above). [1, 2] The judgment now complained of is not erroneous if the judgment in the former suit operated to bar the recovery sought by appellants in this one. It did so operate if appellants' "cause of action" in that suit was the same as their "cause of action" in this one, for it is settled law (34 C. J. 743, 750, and authorities there cited) that:

"The judgment or decree of a court of competent jurisdiction upon the merits concludes the parties and privies to the litigation and constitutes a bar to a new action or suit involving the same cause of action."

And it is also settled law in this state (Carpenter v. Landry, 45 Tex. Civ. App. 506, 101 S. W. 277, and cases there cited):

"That a judgment sustaining a general demurrer is as final and conclusive as if rendered upon a hearing of the facts, and if such judgment is not appealed from [and set aside] the plaintiff is thereby precluded from recovery in another suit between the same parties upon the cause of action to which such demurrer has been sustained."

[3] That the first suit in form was a statutory one of trespass to try title, while the last suit, in form, was to dissolve a partner-

ship alleged to exist between appellants and appellee, and to compel an accounting of the partnership assets, is of no importance if the "grievance and wrong" complained of in the respective suits were, in legal effect, the same. Philipowski v. Spencer, 63 Tex. 604.

Were they the same? We think so. It appeared from the pleadings in the two suits, including appellants' trial amendment in the first one, set out in the statement above, that the grievance and wrong constituting the basis of the complaint in the respective suits was the repudiation by appellee of his agreement (as alleged) that he and appellants should jointly own the 132 acres of land when it was conveyed to him, and should act together in opening up and operating gravel pits thereon. In the first suit appellants sought a recovery of an undivided interest in the land, and damages measured by the rental value of the interest. In the last suit they also sought a recovery of an interest in the land, and damages, but measured by profits arising from the sale of gravel thereon, instead of by the rental value thereof.

The difference between the suits, it will be noted, did not lie in substantive facts alleged, but in conclusions drawn by appellants from those facts. In each of these suits the facts alleged, as appellants construed same, had the effect to vest title to an undivided interest in the land in them, but in the first suit appellants did not, and in the last one they did, construe those facts to have the further effect to create a partnership between them and appellee. If the conclusion last stated was warranted by the facts alleged in appellants' pleadings in the instant suit, we think it was warranted by the facts alleged in their pleadings in the first suit, for, as we understand same, there was no difference between the material facts alleged in the one suit and the material facts alleged in the other. If that is true, then the grievance and wrong complained of was the same in both suits, for it was the facts, and not the pleader's conclusions from the facts, that constituted the grievance and wrong complained of. "A party cannot," said the Supreme Court in Bank v. Wandelohr, 105 Tex. 226, 146 S. W. 1186, "escape the bar of a judgment against him by bringing a new suit on the same cause of action but in a different form of action or proceeding." And see, as pertinent to the question presented, Dixon v. Watson, 52 Tex. Civ. App. 412, 115 S. W. 100; Fant v. Sullivan, 58 Tex. Civ. App. 392, 124 S. W. 691; Mallory v. Oil Co., 32 Tex. Civ. App. 294, 74 S. W. 953; Cunningham v. Cunningham (Tex. Civ. App.) 227 S. W. 221; Corrugated Culvert Co. v. Simpson Township, 51 Okl. 178, 151 P. 854, 4 A. L. R. 1170; Phelan v. Quinn, 130 Cal. 374, 62 P. 623; 34 C. J. 797, 799, 813, and authorities there cited.

We think the conclusion of the trial court

that the judgment in the first suit was a bar to the relief sought by appellants in this one was correct. Therefore the judgment complained of is affirmed.